# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERIC MACK WRIGHT,<br><br>         Plaintiff,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, et al.,<br><br>         Defendants. | CASE NO. 17cv1451-LAB (MDD)<br><br>**ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT [Dkts. 20, 21, 22]** |

In 2014 and 2015, Plaintiff Roderic Mack Wright submitted requests to each of the agency-defendants under the Freedom of Information Act ("FOIA"), seeking documents related to a federal criminal investigation into his business dealings. Wright alleges that the defendants failed to produce responsive, nonexempt documents and thereby violated the FOIA. The agencies now move for summary judgment, arguing that their respective productions complied with FOIA rules. For the reasons below, those motions are **GRANTED**. Dkts. 20, 21, 22.

**Legal Standard**

"Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *Nat'l Res. Def. Council v. Dep't of Def.,* 388 F. Supp.2d 1086, 1094 (C.D. Cal. 2005) (quoting *Mace v. EEOC,* 37 F. Supp. 2d 1144, 1146 (E.D. Miss. 1999)). "FOIA gives individuals a judicially-enforceable right of access to government agency documents." *Lion Raisins v. Dep't of Agric.,* 354 F.3d 1072, 1079 (9th Cir. 2004) (citing 5 U.S.C. § 552), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food &*

*Drug Admin.*, 836 F.3d 987, 990 (9th Cir. 2016). The FOIA provides, among other things, that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

"The Supreme Court has interpreted the disclosure provisions of FOIA broadly, noting that the act was animated by a 'philosophy of full agency disclosure.'" *Lion Raisins,* 354 F.3d at 1079 (citing *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152 (1989)). "FOIA contains nine exemptions, however, which a government agency may invoke to protect certain documents from public disclosure." *Minier v. Cent. Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996) (citing 5 U.S.C. § 552(b)). "Unlike the disclosure provisions of FOIA, its statutory exemptions 'must be narrowly construed.'" *Lion Raisins,* 354 F.3d at 1079 (quoting *John Doe Agency,* 493 U.S. at 152). "Where the government withholds documents pursuant to one of the enumerated exemptions of FOIA, 'the burden is on the agency to sustain its action.'" *Id.* (quoting 5 U.S.C. § 552(a)(4)(B)). "An agency's refusal to disclose information is subject to *de novo* review by a district court." *Beck v. Dep't of Justice,* 997 F.2d 1489, 1491 (D.C. Cir. 1993) (citing 5 U.S.C. § 552(a)(4)(B)). In addition, the governmental agency has the burden of proving that it has "conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see also Zemansky v. EPA,* 767 F.2d 569, 571 (9th Cir. 1985).

**Department of Justice, Tax Division**

### 1. FOIA Request and Agency Response

On July 14, 2014, Wright made a FOIA request to the Department of Justice, Tax Division, seeking "ALL records (Electronic, paper and other) regarding the above referenced individual [Roderic Mack Wright]. Including but not limited to, the investigation by the Northwest Florida Office, FBI Agent Jamie Van Pelt" from 2007 through the date of the request. Complaint, Dkt. 1, Ex. 1. After confirming Wright's identity, the Tax

Division assigned the request to two of its employees and began running searches for responsive documents in "TaxDoc," a management system containing records of all matters received by the Division since 1978. The Division located two file numbers corresponding to criminal matters related to Wright: DJ Nos. 5-17-2735 and 5-17-2736. The agency then searched its Document Management System ("DMS") for "Roderic Mack Wright," which produced several relevant records. Banerjee Decl., Dkt. 21-2, at ¶ 21. Searches for "Van Pelt," "Pelt," and the "FBI" returned no additional documents, but a search for "Roderick Mack Wright" combined with the two DJ Numbers yielded one email not previously located. *Id.* at ¶ 26.

On September 25, 2015, the Tax Division sent its final response to Wright. It released five pages of records related to DJ No. 5-17-2736, including two routing slips, a Criminal Enforcement Sections Case Weighting Form, and a Criminal Enforcement Sections Case Post Review Analysis Form. *Id.* at ¶ 12. Portions of those records were redacted under FOIA Exemptions 5, 6, and 7. The Tax Division withheld in full three records totaling 35 pages under the same exemptions. *Id.* at ¶¶ 32-35, 36-39c, 40-44d.

The Tax Division also informed Wright that it had referred 70 additional pages of records originating with the Internal Revenue Service ("IRS") to that agency for its processing and direct response. On October 16, 2015, the IRS wrote to Wright that these 70 pages were being withheld in full because they consisted solely of documents generated for, and discussing detailed aspects of, a grand jury investigation. *See* Valvardi Decl., Dkt. 21-3, at ¶¶ 15, 22-30. Several of the records were also, in the IRS's view, either exempt as privileged attorney communications or exempt as containing confidential taxpayer information. *Id.* at ¶¶ 31-36, 37-45. In total, all 70 pages were withheld as confidential grand jury information and 60 of the 70 pages were withheld under additional, applicable FOIA exemptions.

/ / /

/ / /

**1.     Analysis**

The Tax Division[1] argues it is entitled to summary judgment because it conducted a reasonable search and then properly withheld documents under the relevant FOIA exemptions. Wright's opposition—which contains 17 pages of mostly irrelevant background information copied and pasted directly from his opposition to the Department of Justice's motion for summary judgment—is so sparse on rebuttal arguments that it should be construed as consent to the Tax Division's motion being granted in its entirety. The opposition allots just three of twenty pages to discussing the Tax Division's claimed exemptions, and in that three pages discusses only Exemption 6. He addresses none of the other exemptions claimed by the Tax Division, nor the adequacy of its search. Based on Wright's failure to address the arguments presented, the Court finds that the Tax Division's search was reasonable and that its application of Exemptions 3, 5, and 7 were proper. *See Image Tech. Serv., Inc. v. Eastman Kodak*, 903 F.2d 612, 615 n. 1 (9th Cir. 1990) (holding that plaintiff's failure to raise an issue in opposition to defendant's motion for summary judgment waived the issue); *Hakakha v. CitiMortgage, Inc.*, 2015 WL 4873561, at *8 (C.D. Cal. 2015) ("The Court construes Plaintiff's failure to address those arguments as Plaintiff's concession that they are valid reasons to dismiss those claims.").

As discussed above, the only challenge Wright makes in his opposition is that the Tax Division incorrectly applied Exemption 6.[2] Although his argument seems to be related to the DOJ's (not the Tax Division's) decision to apply Exemption 6 to withhold a search warrant that was otherwise responsive to his DOJ FOIA request, the Tax Division withheld the following information under Exemption 6:

/ / /

---

[1] Unless otherwise specified, the Tax Division and IRS are treated as a single entity for purposes of this order.

[2] The same documents the Tax Division withheld under Exemption 6 were also withheld under other FOIA exemptions, such as Exemption 7(c). Since Wright has waived any argument regarding exemptions other than Exemption 6, it is unnecessary to reach the Exemption 6 question. The Court does so only out of an abundance of caution.

- The names of criminal defendants or targets (other than Wright) in a 31-page internal Tax Division Memorandum that was sent from a trial attorney in the Tax Division's Criminal Enforcement Section to the Division's Principal Deputy Attorney General and set forth recommendations regarding whether to prosecute Wright. Banerjee Decl., Dkt. 21-1, at ¶¶ 36, 39b-39c;
- The names of criminal defendants or targets (other than Wright) in a three-page letter from the Tax Division's Criminal Enforcement Section to the Office of the United States Attorney for the Northern District of Florida discussing aspects of Wright's criminal investigation. *Id.* at ¶¶ 40, 44a-44b;
- The name of a Special Agent from a September 2, 2011 letter. *Id.* at ¶ 44a; and
- Names, email addresses, home addresses, dates of birth, and social security numbers of individuals referenced throughout the production. Valvardi Decl., Dkt. 21-3, at ¶¶ 55-58.

FOIA Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In determining whether Exemption 6 applies, the court considers two factors: (1) whether the information is contained in a personnel, medical, or "similar" agency file, the disclosure of which constitutes a "clearly unwarranted invasion of personal privacy," and (2) whether a countervailing public interest in the record outweighs the individual's privacy interest. *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009).

Given that the individuals referenced in the Tax Division's documents were linked to criminal investigations, the Tax Division properly applied Exemption 6 to withhold their names and personal information from its production. As the Ninth Circuit recognized in *Lahr*, "protection from such unwanted contact facilitated by disclosure of a connection [between a private individual and] government operations and investigations is a cognizable privacy interest under Exemption[] 6." *Id.* at 976. Further, the Tax Division's decision to redact names, email addresses, home addresses, dates of birth, and social security numbers of individuals mentioned in the documents (and especially those linked to a criminal investigation) is consistent with a long-recognized rule that such disclosure

would constitute a "clearly unwarranted invasion of personal privacy" with no countervailing public interest. *See Torres Consulting & Law Grp., LLC v. Nat'l Aeronautics & Space Admin.*, 666 F. App'x 643, 645 (9th Cir. 2016) ("[I]nformation that identifies a particular individual—names, addresses and social security numbers—has been redacted, as [Plaintiff] concedes it should be.").

Wright makes two primary arguments in response. First, he already "knows the names of all the players in this story" and thus there's no harm in disclosing their identities. *See* Opp. at 18. But fact that Wright may already know these individuals' names is irrelevant—as the Tax Division correctly points out, the question is whether disclosure of their names and identifying information to the public would violate their privacy. It would. Wright also makes a passing argument that these documents should be produced even if the identifying information is redacted. *See* Opp. at 17. As discussed, though, these documents were withheld under multiple exemptions and Wright has not addressed any exemption other than Exemption 6 in his opposition. Even if production with redactions would be appropriate under Exemption 6, the documents were properly withheld in full under other exemptions, so this argument is unavailing.

In sum, there was no error in the Tax Division's decision to withhold private information under Exemption 6. Wright has not addressed the Tax Division's application of the other exemptions nor the reasonableness of its search, so these arguments are waived. The Tax Division's Motion for Summary Judgment is **GRANTED**. Dkt. 21.

### Department of Justice[3]

**1. FOIA Request and Agency Response**

On March 3, 2015, Wright submitted a FOIA request to the FBI requesting "all documents regarding the above referenced matter," referring to court case *USA v.*

---

[3] The DOJ moves for summary judgment on behalf of the four separate agencies: (1) the Federal Bureau of Investigation ("FBI"), (2) the Executive Office for the United States Attorneys ("EOUSA"), (3) the U.S. Attorney's Office, Northern District of Florida, and (4) Department of Justice, Office of Information Police ("OIP"). The OIP is not a defendant in this suit and Wright does not appear to challenge its actions.

*Roderick Mack Wright* and USAO Number 2009R00343. *See* Hardy Decl., Dkt. 20-8 at ¶¶ 5-6. The agency responded that it had located approximately 3,506 pages of records and one compact disc potentially responsive to his request. To expedite the process, the FBI and Wright agreed that his request would be limited "to the first 16 pages of the search warrant affidavit and third-party depositions, with the understanding that all material undergoes FOIA review and exempt material would be withheld." *Id.*, Ex. E. In total, this reduced the universe of potentially responsive documents from 3,506 to roughly 50. *Id.* After consulting with another government agency, the FBI released one document to Wright on February 26, 2016 that related to a bankruptcy proceeding from the Northern District of Florida. *See id.* at ¶ 14. The FBI supplemented that production on November 30, 2017, releasing seven additional pages containing emails between the U.S. Attorney's Office, Northern District of Florida and the FBI, as well as a memorandum regarding potential mortgage fraud by Wright and Pointe Development of Destin, Inc. The remaining responsive documents were withheld as exempt. *See id.* at ¶ 16.

On the same date Wright submitted his FOIA request to the FBI, he submitted an identical request to the U.S. Attorney's Office, Northern District of Florida, which was referred to the EOUSA for processing. *See* Kornmeier Decl., Dkt. 20-2, Ex. A. The EOUSA responded that it had located 122 pages of responsive material, but that these documents were being withheld in full as related to grand jury proceedings. *See* Compl. Dkt. 1, Ex. 30. The EOUSA also located several additional documents that originated with different agencies and referred those documents to their respective agencies for processing. *See* Kornmeier Decl. at ¶¶ 8-9. Finally, on October 11, 2017, the EOUSA sent Wright a letter explaining that it was withholding another seven pages of grand jury materials that had been located at the U.S. Attorney's Office, Northern District of Florida. *Id.* at ¶ 7.

The searches performed by the FBI and EOUSA were substantially similar to those performed by the Tax Division, discussed above. Upon receipt of his request, the DOJ conducted an index search of its Central Records System using the following search

terms, including phonetic breakdowns of each: "Roderic Mack Wright," "Roderic M Wright," and "Roderic Wright." *See* Hardy Decl., Dkt. 20-8, at ¶ 24. These searches encompassed records maintained at FBI headquarters as well as all FBI field offices. *Id.* The agency used information in Wright's request letter, such as his date of birth and other identifying information, to help locate responsive documents. *Id.* As a result, the FBI located one responsive main file that was indexed under Wright's name; within this file were records specifically requested by his negotiated request. *Id.*

### 2. Analysis

The DOJ argues it is entitled to summary judgment because it conducted a reasonable search and then properly withheld documents under the relevant FOIA exemptions. Like his response to the Tax Division's motion, Wright does not make a meaningful effort to oppose the DOJ's motion. The first 17 pages of his 21-page opposition are identical to those submitted in response to the Tax Division's motion—the pages are filled with irrelevant background information that has little to no bearing on the matters currently before the Court. With limited exception (discussed below), he does not engage with the DOJ's claimed exemptions nor explain why these exemptions were incorrectly applied to the specific documents at issue. Instead, he makes a handful of scattershot arguments and combines those arguments with generic statements of law concerning FOIA's goal of furthering public disclosure. Rather than belabor the point by marching through the documents withheld and the propriety of the exemptions applied to each, the Court will instead address the few responsive arguments Wright makes. As with the Tax Division, all other arguments are deemed waived.[4] *See U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in the briefs"); *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("It is not [the] task . . . of the

---

[4] The lackluster nature of Plaintiff's oppositions is especially disheartening in light of the amount of time the Court gave him to prepare his responses. Wright had more than three months to put together oppositions to the defendants' motions, including an extension of time granted specifically so he would have adequate time to prepare.

- 8 -

district court[] to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

Wright first argues that the DOJ failed to submit a "*Vaughn* index," which is a list of documents withheld and the reasons for doing so. See Opp. at 22. He's incorrect. Both the FBI and EOUSA submitted *Vaughn* indexes. See Hardy Decl., 20-8, Ex. L; Kornmeier Decl., Dkt. 20-2, Ex. E. These indexes contain sufficient descriptions of the documents withheld and the specific exemptions applied to each. Accordingly, even if the Court were to construe Wright's argument as an attack on the sufficiency (rather than existence) of the agencies' indexes, his argument fails. *See Landmark Legal Found. v. I.R.S.*, 267 F.3d 1132, 1138 (D.C. Cir. 2001) ("[A] *Vaughn* index is not a work of literature; agencies are not graded on the richness or evocativeness of their vocabularies. The index offers individualized descriptions of the documents themselves and then, typically . . . tracks that of the statute itself. It is not the agency's fault that thousands of documents belonged in the same category, thus leading to exhaustive repetition.").

He next argues that the FBI's search was inadequate because it failed to use the name "Rod Wright"—a nickname used by his associates—in searching for responsive records. The FBI, of course, would have no way of knowing it should use that moniker since it was not a name listed on Wright's FOIA request. The FBI searched for three separate variations of the name "Roderic Mack Wright," including phonetic variations of each. Its efforts were more than sufficient to constitute a good-faith search.

The bulk of Wright's objections relate to the FBI's decision to exempt as grand jury materials certain documents Wright says should have been disclosed. First, he says that search warrant affidavits should have been disclosed because they were completed before the grand jury was seated and thus could not be grand jury materials. Documents related to grand jury investigations enjoy broad protection from public disclosure. *See Iglesias v. Cent. Intelligence Agency*, 525 F. Supp. 547, 556 (D.D.C. 1981) ("Rule 6(e) embodies a broad sweeping policy of preserving the secrecy of grand jury material

regardless of the substance in which such material is contained."). This protection does not begin the moment the grand jury is seated—it also extends to documents that predate the investigation whose disclosure would "tend to show the substance of testimony or the direction and strategy of the investigation." *Greenberg v. U.S. Dep't of Treasury,* 10 F. Supp. 2d 3, 28 (D.D.C. 1998) (citations and quotation marks omitted). The search warrant affidavits here, which were created by an IRS Special Agent in advance of the grand jury proceedings, are indicative of the "direction and strategy of the investigation" because they show who and/or what was being searched. Such materials were properly withheld under Exemption 3.

Wright also argues that some of the grand jury designations were applied after he filed his FOIA request. *See* Opp. at 16. Of course they were. While it's conceivable that some document designations are made on a rolling basis, many document designations are not made until a member of the public submits a request for production that requires the agency to consider whether a specific document should be released to the public. That a designation is made after a FOIA request is irrelevant to whether the document is exempt or not.

Wright emphasizes how few documents the DOJ ultimately produced relative to the number initially identified as responsive. But the fact that the DOJ's final production was small is not surprising. Wright's requests centered on a criminal investigation into his own business dealings, and documents related to criminal investigations are among the most protected government documents. Indeed, at least four of the nine FOIA exemptions can be construed as touching on criminal investigations in some way. *See* 5 U.S.C. § 552(b)(3) (exempting documents protected by other statute, including Fed. R. Crim. Pro 6(e), which relates to grand jury documents); *Id.* § 552(b)(5) (exempting intra- and inter-agency memoranda, including investigatory documents); *Id.* § 552(b)(6) (exempting the disclosure of documents, such as witness or agent names, that would "constitute a clearly unwarranted invasion of personal privacy"); *Id.* § 552(b)(7) (exempting "records or information compiled for law enforcement purposes."). So while

Wright makes much of the fact that he received only a few pages from the DOJ, this outcome is not unusual in light of the type of material he sought.

At the very end of his opposition, Wright reveals the underlying objective of this FOIA proceeding: an order allowing "Wright to depose[] Patrick Barcus, Blair Mielke, and William Amos to prove conclusively that the FBI interfered with Wright's business dealings." Opp. at 22. This type of request is entirely beyond the scope of this FOIA proceeding. *See Wheeler v. C.I.A.*, 271 F. Supp. 2d 132, 139 (D.D.C. 2003) ("Discovery is generally unavailable in FOIA actions."); *In re Steele*, 799 F.2d 461, 466 (9th Cir. 1986) ("The FOIA is not to be used as a substitute for the traditional means of discovery available to a litigant."). The point of this case is to determine whether the various agencies properly withheld documents under the relevant FOIA exceptions, not to provide the best ammunition to Wright in his efforts to show that the government interfered in his business dealings. Although Wright's confusion helps to explain why his oppositions focus on the irrelevant details of the government's criminal investigations, it does not warrant denying summary judgment. His request for discovery is **DENIED** and the DOJ's Motion for Summary Judgment is **GRANTED**. Dkt. 20.

### Department of the Treasury

**1. FOIA Request and Agency Response**

On July 13, 2014, Wright submitted a FOIA request to the Department of the Treasury through its online "goFOIA" web portal. *See* Law Decl., Dkt. 22-3, Ex. A. His request sought "ALL records (Electronic, paper and other) pertaining to the Investigation of Roderic Mack Wright (The above named Requester) by the Pensacola Division, Department or Office. In particular the investigation conducted by Treasury Agents Margaret Weiss and Phillip Dreason." *Id.* After confirming receipt of his request, the Treasury informed Wright via letter that "his request failed to describe the requested records in reasonably sufficient detail to enable Treasury employees who are familiar with the subject area of the request to locate the records without placing an unreasonable burden upon the Department." Law Decl. at ¶ 9. The Treasury requested that he

resubmit his request with a reasonable description of the specific records sought. It also provided him a link to a list of specific Treasury records systems to help Wright in reformulating his request. *Id.* The Treasury contends that Wright did not respond. Instead, seven months later, on March 3, 2015, Wright provided the Treasury with copies of correspondence related to his FOIA requests to *other* government agencies. This correspondence included a "USAO Number" related to the investigation but did not provide additional information about the types of records sought from the agency. The Treasury again informed him that his FOIA request was still too vague and that the agency required additional information to facilitate a reasonable search. The Treasury contends that Wright again failed to respond, and it then administratively closed his request under 31 C.F.R. 1.5(a)(1), which provides that "[i]f a requester does not respond within 30 days to a communication from a bureau to amend the request in order for it to be in conformance with this subpart, the request file will be considered closed."

For his part, Wright initially alleged in his Complaint that he did respond to the Treasury's requests for clarification, first on August 5, 2014 and later on April 21, 2015. Compl., Dkt. 1., at ¶¶ 11, 22. The Treasury has no record of ever receiving these letters, though, and Wright concedes in his opposition that he may have mistakenly provided information to the DOJ Tax Division that was intended for the Treasury. *See* Opposition, Dkt. 28-2, at 5.

### 2. Analysis

An agency's obligations under FOIA to search for and release records "are not triggered . . . until it has received a proper FOIA request in compliance with [the agency's] published regulations." *Antonelli v. Fed. Bureau of Prisons*, 591 F. Supp. 2d 15, 26 (D.D.C. 2008). A proper, perfected FOIA request is one that "reasonably describes" the records sought, 5 U.S.C. § 552(a)(3)(A), and a party's failure to perfect a request constitutes failure to exhaust administrative remedies, which precludes judicial review. *Flowers v. IRS*, 307 F. Supp. 2d 60, 66 (D.D.C. 2004). The question here is whether

Wright's request to the Treasury "reasonably describe[d]" the documents sought, such that the agency had a duty to search for and produce responsive documents.

FOIA processing within the Treasury is decentralized—each of the agency's nine divisions (for example, the IRS and the Bureau of Engraving and Printing) process their own FOIA requests. Law Decl. at ¶ 5(a)-(i). Requests directed at the Treasury in general are treated as requests to the Treasury's headquarter offices, such as the Office of the Secretary. *Id.* at ¶ 1, n.1. In light of this, the Treasury argues that Wright's request for "all documents pertaining to" an investigation by a separate agency (or a separate division of the Treasury) is not a reasonable description of the documents sought.

"Broad, sweeping requests lacking specificity are not permissible," nor are requests that would require the agency to "engage in quite a bit of guesswork to execute." *Yagman v. Pompeo*, 868 F.3d 1075, 1081 (9th Cir. 2017) (citing *Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978)). Whether Wright's request here was impermissibly broad would normally be a close call. On one hand, "all records . . . pertaining to [an investigation]" is more or less the definition of a broad, sweeping request. On the other hand, Wright specifically named the individuals and office involved in that investigation, which would cut down considerably on the guesswork required. What tips the scales in favor of the Treasury is that Wright did not respond when asked for clarifying information. Although the Treasury may have been able to search for documents based on the information provided (or at least referred the request to the relevant division), it chose instead to request supplemental information so that it could be sure it was providing responsive information. That decision was not improper. The agency invited Wright on July 13, 2014 to refine his request and suggested that he could identify specific records systems (from a list provided) that might contain the documents he sought. Wright's only confirmed response to the Treasury came on March 3, 2015, when he resubmitted the same basic request, but this time added the "USAO Number" of the investigation. Given that this USAO Number was a number assigned by a separate agency (the DOJ), this additional information did not clarify the FOIA request such that the Treasury had a duty

to respond. *See Yagman*, 868 F.3d at 1081 (FOIA obligations are triggered "only upon a request which 'reasonably describes' the records sought.") (citing *Marks*, 578 F.2d at 263). When the Treasury again reached out to him for clarification, Wright again failed to respond.[5] Given the opportunities given to Wright to clarify his broad request and his failure to do so, the Treasury did not have an obligation to respond under the FOIA. The Treasury's Motion for Summary Judgment is **GRANTED**. Dkt. 22.

## Conclusion

The agency-defendants' motions for summary judgment are **GRANTED**. Dkts. 20, 21, 22. The clerk is directed to enter judgment accordingly and close the case.

**IT IS SO ORDERED**.

Dated: April 4, 2019

**HONORABLE LARRY ALAN BURNS**
Chief United States District Judge

---

[5] Again, Wright has made inconsistent claims that he did respond to these requests for clarification. The declaration provided in support of the Treasury's motion, however, describes the agency's correspondence tracking system and confirms that the agency did not receive any subsequent clarification from Wright as to his FOIA request, except the March 3, 2015 letter discussed above. *See* Law Decl. at ¶ 13. Wright admits in his opposition that some information intended for the Treasury may have been mistakenly provided to the DOJ instead. *See* Opp. at 5. Absent a triable issue of fact here, summary judgment is warranted.